## Simpson's Executor *versus* Bovard.

1. In an action on a bond against a surety, judgment having been obtained against the principal he is a competent witness for the surety.

2. Although there was an expectation by a surety, from the statements of the principal when a bond was signed, that there was to be another surety, the bond was binding on the one signing although not executed by the other.

3. The principal owed a note, which being due, he procured a surety on another in payment of the first; the surety signed it in blank, gave it to the principal to fill up and use it in payment of the first note: *Held*, that thereby the surety made the principal his agent to complete the note.

4. The surety could not relieve himself from liability to the obligee who

74  351
134  198
74  351
192  283
74  351
35 SC 432

took the note bonâ fide for a valuable consideration, by showing that his instructions as to filling up the note were not followed.

5. The surety having created confidence by putting the note in blank into the principal's hands, must suffer the loss as between himself and another innocent party.

6. Evidence in this case showed due diligence in the creditor in pursuing the principal after notice.

October 29th 1873.    Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Armstrong county :* No. 156, to October and November Term 1873.

To March Term 1867, of the court below, judgment was entered by the prothonotary in the Court of Common Pleas in favor of James Simpson against Hugh Campbell and George Bovard for $1342 on a note with warrant of attorney.

In June 1869, on the affidavit of George Bovard, a rule was granted to show cause why the judgment should not be opened and the defendant let into a defence.

The affidavit set forth that Campbell in the spring of 1866 exhibited to deponent a judgment-note to which there were no signatures and without any amount in it, and wished deponent to sign the note for $1000, as security to Simpson for Campbell, that Charles Bonner was to be the other surety and that the note would not be delivered till signed by Bonner ; that the deponent relying on these statements signed the note believing it was for $1000, and that it would be signed by Bonner; and never knew otherwise until judgment was entered on it on the 24th of April 1867; that he frequently requested Simpson to have judgment entered on the note, collect it and relieve the deponent; on the 23d day of May 1867, Campbell made an assignment for the benefit of his creditors, and on that day before the assignment, deponent requested Simpson to enter judgment on the note and if he had so done it would have been secured, that Simpson did not enter it till after the assignment; that Simpson knew of the agreement with Campbell that the note was to be filled with $1000, and not to be binding unless signed by Bonner, and with that knowledge accepted the note without Bonner's signature.

Simpson having died, John Patterson his executor was substituted.

On the 24th of November 1869, the rule was made absolute and an issue awarded to try the truth of the allegations in the affidavit.

The issue was tried September 13th 1871, before Logan, P. J.

The plaintiff gave in evidence the note as follows :—

"$1342.                              12th May, A. D. 1866.

One year after date, we, or either of us, promise to pay James Simpson, Sr., heirs or assigns, the sum of thirteen hundred and forty-two dollars and ———— cents, without defalcation, value re-

[Simpson's Executor v. Bovard.]

ceived, and we hereby authorize any attorney of any court of record of the United States or elsewhere, to appear for us, and after a declaration filed, to confess judgment against us for the above sum, &c., * * * the further sum of five cents on the dollar for collection fees, &c. * * *

Witness our hands and seals.    HUGH CAMPBELL.   [SEAL.]
                              GEO. BOVARD, Bail.  [SEAL.]
                          —————— ————, Bail. [SEAL.]

There were endorsements on the note of payments; and of receipts from Campbell's estate.

The plaintiff here rested.

The defendant called Hugh Campbell as a witness; he was objected to as incompetent, being a co-obligor in the note, and Simpson being dead, and also to his proposed evidence which is hereafter given. The testimony was admitted and a bill of exceptions sealed.

He testified that the word " bail" after the defendant's signature, and that the word " bail," to the third seal and the filling up of the note were in his handwriting; part of the note was filled in at Kittanning and the amount at the house of Simpson; Bovard was not then present. When Bovard signed the note, neither the written amount nor commission of five per cent. were in the note; witness told defendant he would get Bonner's name to the note; defendant asked the amount, witness said the reason he did not put it in, was because he did not know whether they would draw the interest, if they did he would pay it; that the original amount was $1000. Defendant said it would do as it was. Witness executed an assignment for benefit of creditors, April 23d 1867, about 11 o'clock at night.

On cross-examination witness said:

" I told Bovard, I had originally borrowed $1000, but I did not know what the interest was. I was to fill the note up as I did; after Bovard signed, he delivered the note to me—did not say he would not sign unless I got Bonner; don't recollect of his saying anything about Bonner. Did not tell Simpson, that I had told Bovard I would get Bonner to sign the note; he said his father and sister were satisfied with the note as it was, and he was; this may have been afterwards. I did not tell Geo. Bovard I was to fill the note up with the original amount and interest. Told Bovard the amount of the note, $1000; told him that I would fill the note, with interest, if it was not drawn; that was the understanding. Told him I could not tell amount of interest; there was nothing said about putting the interest in the note."

The evidence was that Simpson's house was four or five miles from Kittanning, the county seat of Armstrong county; Bovard's was about one mile from Kittanning; the road to Kittanning from

24 P. F. SMITH—23

Simpson's house passed defendant's store, and the railroad passed near the defendant's store, the train going at about 6 or 7 o'clock in the evening.

Charles Bovard, son of defendant, testified, that he delivered to John Simpson, a son of James Simpson, a paper on the afternoon of April 23d 1867, signed by defendant, telling John Simpson to come up and enter judgment on the note, and if he did not defendant would not be "bail" any longer. James Simpson's name was not in the paper; he testified that he gave the note to John Simpson about 4 o'clock P. M.; and that there was plenty of time to go from Simpson's to Kittanning after the note was delivered.

The defendant called Patterson, the executor, and offered to prove by him declarations of John Simpson in relation to giving the note; this was objected to by the plaintiff on the grounds that there was no proof of John's agency, and John himself was present in the court-house. The offer was admitted and a bill of exceptions sealed.

The witness testified: "Before Campbell gave the new note, John Simpson told me that Campbell was to get Geo. Bovard and Chas. Bonner on the note. He told me that he had nothing to do with taking any security unless his father and sister were satisfied. He said he told Campbell that there were to be two names, and he showed it to his father and sister, who said Bovard was enough. John Simpson did not say this conversation was at time of taking note; said that James Simpson and his daughter wanted a new note, with security, and wanted to see Mr. Campbell and have a new note with security. First note had no security."

Defendant gave evidence as to the amount of the real estate of Campbell, and that all the liens prior to the assignment were paid from its proceeds; that one judgment for $10,000 was entered against him at 9.40 o'clock in the evening of the assignment.

There was evidence that John Simpson, son of James, said before the note was executed that Campbell was to get Bovard and Bonner on it.

John Simpson, in rebuttal, testified for plaintiff that he was not the agent for his father to collect this note; that Charles Bovard came to the house between 5 and 6 o'clock of April 23d, but gave witness no paper. He said his father wanted to see witness that evening; witness said it was too late, the office would be shut and nothing could be done. Witness went up next morning as early as he could; left home at 6 o'clock in the morning; stopped at defendant's, who said he had better go on, "there is a heap of money going to be entered to-day." Witness handed the note to the prothonotary about 8 o'clock on the morning of the 24th. James Simpson was about ninety years old, and did very little business. Witness kept the note for his father from the time

Campbell gave it to him until it was entered, and received payments on it.

There was other evidence that the defendant's sons came to Simpson's between 5 and 6 o'clock on the evening of the 23d of April about entering the note.

The following are points of the plaintiff, with their answers:—

1. If the note in controversy was signed and delivered to Campbell by the defendant, with the understanding that another not named in the note should sign before it was delivered to Simpson; and it was delivered without such signature being obtained and received by Simpson; without notice of such understanding or circumstance which should put him upon inquiry, the understanding between Campbell and the defendant will not avail the defendant.

Answer: "Affirmed, with the qualification that if the jury believe the note was filled up by Campbell, in the presence of Simpson and absence of Bovard, this was such a circumstance as put him on his inquiry."

2. If the note in controversy was signed and delivered to Campbell by the defendant in blank, with the understanding between them that it was to be filled up to secure a note of one thousand dollars, and that it was filled up by Campbell before it was delivered to Simpson for any greater amounts, and received by Simpson, without notice of such understanding between Campbell and the defendant, that will not avail the defendant, and he is bound by his signature at least for the sum of one thousand dollars, with interest from the date of the note, and with the commission of five per cent. for collection.

Answered in the negative.

3. The testimony of the defendant, taken as true, is not sufficient in law to establish either general or special agency of John Simpson, and his declarations given in evidence are to be disregarded by the jury, and no notice having been served on James Simpson, this part of the defendant's case fails.

Answer: "It is for the jury to say whether John Simpson was acting as agent of James Simpson, and we answer this point in the negative."

4. James Simpson, the obligee of the note, was not bound to enter up the note in controversy as a judgment, with or without notice, before the note became due.

"Answered in the negative, if the jury believe there was any real estate on which the entry of a judgment on the note could have secured the money."

5. There is not any evidence in this case that the defendant signed the note in controversy, upon the condition or with the understanding that the name of Bonner or any one else was to

join him in it as co-security, and therefore the defence cannot be sustained on the grounds alleged by defendant in relation thereto.

Answered in the negative.

6. Under the evidence in this cause James Simpson, the obligee, was not bound, even if the jury find the facts as testified to by Charles Bovard, to enter up the note before eleven o'clock the night of the 23d April 1867, nor was he bound to enter the same before it came due.

Answer: " This is a question of reasonable diligence for the jury, and we cannot instruct as requested."

7. If James Simpson was bound to enter up the note as a judgment on the notice of Mr. Bovard, he would be entitled to reasonable notice; and if such notice was not given, and the notice itself did not state some sufficient reason for immediate action, then he was not bound to enter it up that night.

Answer : " This is also for the jury to say whether, under all the circumstances, there was reasonable diligence exercised."

8. Under all the evidence in this case, the plaintiff is entitled to recover, and the verdict should be accordingly.

Answered in the negative.

The following were points of the defendants, which were affirmed:—

1. If the jury believe from the evidence that at the time of signing the note in suit by George Bovard, the three seals were to it as they now stand, and so exhibited to said Bovard, with the promise of Hugh Campbell that he would procure Charles Bonner or another solvent man to sign the note as co-security of Bovard, and upon the faith of these facts Bovard signed the note, and these facts were known to James Simpson or his agent, and the note delivered by Campbell and received by Simpson, without another name, he (Simpson) dispensing with such name, and that said action has resulted to the injury of Bovard, the plaintiffs cannot recover.

2. If the jury find from the evidence that prior to the assignment of Hugh Campbell, and up to the hour of executing the same, Campbell was possessed of real estate in the county abundantly sufficient upon the sale to pay all prior liens, and the amount of the note in suit had it been entered, and that Bovard had notified the plaintiff or his agent having the custody of the said note, to enter judgment on said note sufficient length of time before such assignment, to enable him with reasonable diligence to comply with such notice, and he failed and neglected to do so, and by reason thereof the money was not secured from the estate of Campbell, the plaintiff cannot recover from Bovard in this action.

The court charged :— * * *

" The defendants insist that by the testimony offered on their part, such a showing is made as justifies the jury in finding the

note not to be that of the defendant, George Bovard. * * *   A man has the right to sign a paper of this kind in blank with instructions to the person in whose hand he places it, to fill it up; and if that instruction be complied with, the note filled up and used according to the terms upon the condition and in the manner directed at the time of signing, then the obligation will be binding, and the note good in the hands of the holder. * * *   It would not seem to be disputed that the note was signed in blank by Bovard, and by him delivered to Campbell; nor does there seem to be any dispute that the note was filled with the name of Simpson the obligee.   It is contended, however, on the part of the defendant's counsel :—

"1. That the direction and agreement was not complied with by Campbell; that is, that the note was to be filled for $1000, and was filled for a larger sum.

"2. That Bovard signed on the faith of another solvent man going upon the note as co-surety with him before its delivery to Simpson, and that no such name was procured; and that there were such circumstances attending the delivery to Simpson, as in either event should have put him upon his guard and inquiry. These are both largely questions for you.   As to the first of these points, [if there was a distinct amount named and agreed upon by Bovard, for which the note was to be filled up, and this express agreement was violated by Campbell under such circumstances as should reasonably have put Simpson on his guard, or if he had notice of the fact, then this would be a good defence to the note.]   If, however, Bovard signed the note leaving to Campbell by an understanding and agreement, either to fill up the amount of the principal of the note, or the same with the addition of the interest accrued on the Simpson indebtedness then existing, this would be a joint delegation, and the signing under such circumstances if the other necessary requisites existed, no default subsequently would entitle the plaintiff to recover.   There must be express authority to fill.

"As to the second, [if you believe from the testimony in the case that Bovard signed the note on the faith of Campbell obtaining with him a co-surety of solvency, and he signed it upon such agreement or understanding with Campbell, and that Simpson either had notice of this or there were such circumstances as should reasonably have put him upon his inquiry, then this would constitute a defence to the note in the hands of Simpson in this action against the surety if delivered without such surety.]   If, however, Bovard did not sign in such confidence, but meant to stand as single security for Campbell for the amount of either debt or debt and interest, the result would be different.   It is not insisted by defendant's counsel that the simple occurrence of either of these circumstances between Campbell and Bovard would

alone be sufficient. We speak from the propositions submitted, but concede that knowledge must be brought home to Simpson.

" If you find sufficient evidence of either of these circumstances, before you can allow it as a defence to these notes, you must, as we have said, find actual notice brought home to Simpson or his agent, or such circumstances as would reasonably put him on his inquiry as to whether there was actual notice. This is a matter purely for you. Whether there were such circumstances as should reasonably have put him on inquiry, which is also for you, may be inferred from the facts, [if you find it to be true that the note was brought to Simpson in blank and filled in his presence, and had an additional seal thereon. If Campbell exercised the delegation from Bovard of filling the note up in the presence of Simpson, then Simpson had notice that the filling of amount and conditions upon which it was delivered, were upon Campbell's part the exercise at most of a delegation by Bovard to Simpson, not till then a part of the instrument, and he took the chances of that delegation being properly executed.]

" This brings you to the question of agency. An agent is one who acts in the place or stead of another, and your inquiry is whether, in the matter of this note, John Simpson was acting for James Simpson. Agency may be established by direct evidence, as by express words of appointment, or indirect evidence, as of the relative situation of the parties or their habit and course of dealing. [If John was acting for James, then you will treat the interview bteween Campbell and John as though James were present.] If you believe that James was present, as testified by John, at that interview when the note was delivered, then you can find him acting for himself.

" If the note was good up till here, was there notice ? If the creditor be requested by the surety to sue the debtor, and neglect or refuse to do so, the surety will be discharged, provided the request be positive and accompanied with a declaration that, unless complied with, the surety will be considered as discharged, and the request must be proved clearly and beyond all doubt. The principal is, however, only held to reasonable diligence, under all the circumstances in the case, but is not held to more than this. In this case there is a contradiction between the witnesses as to both the time and terms of the notice. Bovard's witnesses fix the notice at before four o'clock on the 23d, and that there was express and legal notice to John Simpson in form. On the other side the time is fixed at between five and six o'clock, and that there was no express direction, and nothing said as to any peculiar circumstances requiring instant action. How was this ? Was there reasonable diligence exercised if the notice was to a competent person and actually made ? It is alleged, however, this note was not due, and therefore a notice was not applicable. [This

[Simpson's Executor v. Bovard.]

was a judgment-note, and could have been entered up, and if there was any real estate of the principal debtor upon which a lien could have been secured by the entry of the judgment, by the exercise of reasonable diligence on the part of the obligee, and you believe the fact of sufficient notice, and the absence of reasonable diligence in entering the note, and thereby the money could not be made out of Campbell's real estate; which could otherwise have been made, then this would constitute a good defence.] If part only of the money could have been thus secured, then the defence would be *pro rata.* [If John was the agent of James Simpson, authorized and held out as such to Bovard, and so acting at the time of the alleged notice, notice to him would be sufficient."]

The verdict was for the defendant.

The plaintiff sued out a writ of error, and assigned for error:—

1 and 2. The admission of Campbell to testify.

3. Admitting the testimony of John Patterson.

4. The answer to the plaintiff's first point.

5. The answer to the plaintiff's second point.

6. The answer to the plaintiff's third point. ·

7. The answer to the plaintiff's fifth point.

8. The answer to the plaintiff's seventh point.

9. The answer to the plaintiff's eighth point.

10. The answer to the defendant's first point.

11. The answer to the defendant's second point.

12–17. The portions of the charge in brackets.

*J. V. Painter* and *D. Barclay*, for plaintiff in error.—The judgment having been entered against Campbell, he was not a competent witness: Wolf v. Fink, 1 Barr 435; Kirk v. Ewing, 2 Id. 453; Hunt v. Moore, Id. 106; Bittinger v. Keys, Id. 460; Given v. Albert, 5 W. & S. 333; Parke v. Bird, 3 Barr 361; Irwin v. Shumaker, 4 Id. 199; Norris v. Johnston, 5 Id. 290; Wilkinson v. Turnpike Co., 6 Id. 402; Marshall v. Franklin Bank, 1 Casey 386; Swanzey v. Parker, 14 Wright 455; Saurman v. Bodey, 6 Id. 476; Cambria Iron Co. v. Tombs, 12 Id. 387. The Act of April 15th 1869, sect. 1, Pamph. L. 30, 1 Bright. Purd. 624, pl. 16, does not render Campbell competent. The survivor in a contract is not allowed to testify: Act of April 9th 1870, sect. 1, Pamph. L. 44, 1 Bright. Purd. 625, pl. 20; Karns v. Tanner, 16 P. F. Smith 297. The principal is not bound by acts of his agent not within the scope of his authority: Shelhamer v. Thomas, 7 S. & R. 109; Hannay v. Stewart, 6 Watts 487; Dick v. Cooper, 12 Harris 217; Patton v. Minesinger, 1 Casey 393. The note signed by Bovard and delivered to Campbell in blank was good, although filled with a larger amount than Bovard authorized: Wiley v. Moor, 17 S. & R. 439; Garrard v. Haddan, 17 P. F. Smith 82; Orrick v. Colston, 7 Grattan 189; 1 Parsons on Bills

109, 235; Keyser *v.* Keen, 5 Harris 327; Grim *v.* School Directors, 1 P. F. Smith 219; Haskins *v.* Lombard, 16 Me. 140; Passumpsic Bank *v.* Goss, 31 Vt. 315; Selser *v.* Brock, 3 Ohio 302. The notice to enter judgment, &c., should have been clearly proven, and the court should have said whether it was sufficient: Wolleshlare *v.* Searles, 9 Wright 45; Conrad *v.* Conrad, 18 P. F. Smith 381; Hellen *v.* Crawford, 8 Wright 105. Reasonable diligence is a question of law under the sound discretion of the court: Co. Litt. 50.

*E. S. Golden*, for defendant in error.—The principal in a bond is a witness for the obligee when his testimony would relieve: Lovett *v.* Adam, 3 Wendell; Miller *v.* Stem, 2 Jones 383. If the note was to be filled for $1000 and it was filled for more, a recovery on the bond could not be had: People *v.* Boswick, 32 N. York 445; Schuylkill County *v.* Copely, 17 P. F. Smith 386; Fertig *v.* Bucher, 3 Barr 308. As to the notice to proceed, he cited Strickler *v.* Burkholder, 11 Wright 276.

The opinion of the court was delivered, January 26th 1874, by
MERCUR, J.—The first assignment raises the question of the competency of Campbell to testify in behalf of his co-defendant in the judgment. The plaintiff being an executor, and the evidence relating to what transpired during the life of his testator, it is contended that the Act of 15th April 1869 is inapplicable. Prior to this act, the general rule in Pennsylvania undoubtedly was, that a party to the record was incompetent to testify. Generally, a principal debtor is not a competent witness for a surety in an action against the latter. Whenever, however, the suit is ended as to the principal, and the defence made by the surety is personal as to him, as were the facts here, the principal is substantially discharged from the record. Although no regular feigned issue be formed in practice, yet, under the order of court, the trial is in the nature of one and embraces only the parties thereto. Campbell was therefore a competent witness: Talmage *et al. v.* Burlingame *et al.*, 9 Barr 21. This assignment is not sustained.

The second, fourth, fifth, twelfth, thirteenth and fourteenth assignments will be considered together. They all relate to the execution and delivery of the note. We cannot say there was no evidence that Bovard signed under an agreement with Campbell that the name of a co-security should be procured before the note was to be delivered: but it was weak and unsatisfactory. The evidence indicates merely an expectation in the mind of Bovard that another name would be procured, rather than an agreement that it should be, prior to the delivery thereof. In Hoskins *et al. v.* Lombard, 16 Maine 140, it was held, that a mere expectation by the surety, that the bond would be signed by another surety,

[Simpson's Executor *v.* Bovard.]

although not signed by the other, is binding upon the one signing. It is true there was some evidence that Simpson's alleged agent understood, before the note was drawn, that Campbell was to procure the signature of two sureties for Simpson's benefit, yet there was no evidence that either Simpson or his agent had any knowledge that this was communicated to Bovard, or that he acted upon it. Simpson may well have supposed that the note was prepared to meet his requirement only for two sureties. When the note was presented to him with the name of Bovard only as surety, he was satisfied with it, and waived the procurement of another.

Bovard signed the note in blank and put it into Campbell's possession, with authority to fill it up and to use it in payment of the outstanding note of $1000, which Simpson held against Campbell. Bovard thereby made Campbell his agent to complete the note. In the exercise of his power Campbell filled the note. He added to the $1000 the accrued interest and the bonus agreed upon for the extension. The new note was used in the liquidation and extension of the original debt ; that was the purpose for which Bovard signed the note. He clothed Campbell with the apparent authority to fill the note for an amount sufficient to secure the general purpose for which it was to be given. He cannot, then, be permitted to avoid his liability, to the prejudice of one who took the note in good faith and paid for it a valuable consideration, by showing that the specific and private instructions given to his agent were not followed. Hence it was ruled in the York County M. F. Ins. Co. *v.* Brooks, Supreme Judicial Court of Maine, cited in 3 Am. Law Reg. N. S. 399, that where a surety to a bond signed upon the assurance that the principal would also secure two other persons specified and known to such surety, to sign the bond before he delivered the same, which the principal failed to do, but this was wholly unknown to the obligee at the time he accepted the bond, such surety was bound to perform the obligation.

It is a well-settled principle in equity that where one of two innocent persons must suffer, he shall suffer who, by his own acts, occasioned the confidence and the loss. Here Bovard, by his voluntary act, put in Campbell's hands the obligation, and gave to him the apparent authority to fill it in such an amount as he saw proper. He thereby created the confidence, and must suffer the loss thus occasioned : Garrard *v.* Haddan, 17 P. F. Smith 82.

We do not think the fact that Campbell filled up the note in the presence of Simpson created any presumption that he was exceeding his instructions. It was an act rather calculated to repel any suspicion of his improper conduct. Nor was the seal without a signature sufficient to have put Simpson on inquiry : Keyser *v.* Feen 5 Harris 327.

As, then, there was no evidence of any fact being communicated

[Simpson's Executor *v.* Bovard.]

to the plaintiff sufficient to have put him on inquiry, the fact of the jury having found that Campbell exceeded the specific authority delegated to him becomes unimportant.   It follows that the court should have affirmed the first and second points submitted by the plaintiff, and the fourth and fifth assignments are sustained.   The court, in the portions of the charge covered by the twelfth and thirteenth assignments, stated the law correctly as an abstract proposition, yet the facts were insufficient to raise a presumption of notice.   The learned judge therefore erred in admitting the evidence covered by the second assignment, and the twelfth, thirteenth and fourteenth assignments are sustained.

The eighth and sixteenth assignments relate to the diligence required of the plaintiff.   At the time the notice was given to enter the note, it was not due.   No execution could therefore have been issued.   Simpson resided some four or five miles from the county seat.   The notice was given, from four to five o'clock in the afternoon, in the month of April.   No specific reason was assigned why it should be entered.   The plaintiff did cause it to be entered the next morning at eight o'clock.   Under the circumstances, we think the plaintiff did exercise reasonable diligence in entering the note, and the seventh point submitted by the plaintiff should have been affirmed, and the eighth and sixteenth assignments are sustained.   We discover no error in the third, sixth, seventh, tenth, eleventh and seventeenth assignments.

Judgment reversed, and a *venire facias de novo* awarded.