JAMES WHITAKER ET AL. v. A. T. RICHARDS ET AL.

| 134 | 191 |
| 192 | 283 |

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

Argued March 28, 1890—Decided April 7, 1890.
[To be reported.]

1. One who executes a bond, as surety, may protect himself from liability
   thereon by an express stipulation that the delivery by himself shall be
   in escrow. only, until certain others shall have executed it: Fertig v.
   Bucher, 3 Pa. 308; Warfel v. Frantz, 76 Pa. 88; Keener v. Crago, 81*
   Pa. 166.
2. But, in the absence of such a stipulation, the bond, although it was
   prepared for the signatures of other persons, who are named therein as
   sureties but do not execute it, will bind all those who do execute and
   deliver it: Sharp v. United States, 4 W. 21, distinguished.
3. Where a bond, which has been prepared with the members of a part-
   nership named in it as sureties, is signed and delivered by one partner,
   with the expectation, but not with the condition that the other partner
   will execute it, the partner so signing and delivering will be liable
   thereon.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and
MITCHELL, JJ.

No. 124 January Term 1890, Sup. Ct.; court below, No. 644
March Term 1888, C. P. No. 4.

On March 17, 1888, James Whitaker and Theodore Whita-
ker, trading as James Whitaker and Brother, brought assump-
sit against Alexander T. Richards and R. J. Watson, upon a
bond of indemnity to the plaintiffs against mechanics' liens,
etc., alleged to have been given by the defendants. The de-
fendants pleaded non-assumpsit. Before the trial, the defend-
ant Watson died, and his executors, James V. and Sallie J.
Watson, were substituted as defendants in his place.

At the trial on April 17, 1889, the plaintiffs offered in evi-

Statement of Facts.

dence the bond in suit, dated September 17, 1886, the material parts of which were as follows:

"Know all men by these presents, That Alexander T. Richards, contractor, as principal, and R. J. Watson and F. C. Gillingham, trading as Watson & Gillingham, lumber merchants, as sureties, all of the city of Philadelphia, state of Pennsylvania, are held and firmly bound unto James Whitaker and Theodore Whitaker, trading as James Whitaker & Brother, of the aforesaid city, county and state, manufacturers, in the sum of fifteen thousand (15,000) dollars, lawful money of the United States of America, . . . . ."

[After reciting that the contract for the erection of a certain building had been awarded by James Whitaker & Bro. to Alexander T. Richards, and stating the condition of the obligation, the bond concluded with the following:]

"ALEXANDER T. RICHARDS, [SEAL.]"
"R. J. WATSON, [SEAL.]"
"[SEAL.]"

The offer of the bond was objected to by the defendants, on the ground that they had denied its execution, and, also, that the bond sought to bind the defendant Watson.

By the court: Offer admitted; exception.[1]

The plaintiffs then showed breaches of the condition of the bond by the defendant Richards, among other things, by the filing of mechanics' liens against the building by material men, which liens the plaintiffs were compelled to pay. Thereupon the plaintiffs rested.

The defendants put in evidence the testimony of R. J. Watson, deceased, given upon the trial of a former action upon the same bond, wherein the firm of Watson & Gillingham were sued as such. The witness testified, inter alia, as follows:

Mr. Richards came to us and asked us for an estimate for the lumber for this contract, which we did afterwards furnish and deliver. He had got the contract, and wanted us to serve the lumber. We tried to persuade him not to take the contract, but he said he had got into it, and he asked me to go on the bond. I was in some doubt about it. Finally he came and said there would be no risk about it. He said Michael Magee had agreed to go on the bond with us, and he would take half the risk. On those conditions I agreed to go on. . . . .

Statement of Facts.

Q. State the conditions under which the bond was signed, and under which you went to Mr. Geissinger's office. A. I had satisfied myself that Mr. Magee was a good man, and I talked the matter over with my partner, and, although he was loath to do it, he said Mr. Magee was a good man, and he would go on the bond with me and take half the risk, if there was any. In pursuance of this agreement, I imparted this information to Mr. Richards, and he made an arrangement by which we were to meet Mr. Magee on the seventeenth day of September, 1886, the day the bond was signed, in Mr. Geissinger's office. Mr. Gillingham at that time was out of town, and I went down to the office, and when I got there I found Mr. Magee sitting inside of the railing. I did not know him personally. I went in and sat down and in a few minutes afterward Mr. Richards came in. . . . .

Q. State to the jury what occurred at the time of the execution of this bond, when you were in Mr. Geissinger's office. A. I went into the room. I saw Mr. Magee there. I sat down, and in a few minutes Mr. Richards came out and spoke to us, and said, "Mr. Magee, this is Mr. Watson, of the firm of Watson & Gillingham. He is willing to go on my bond." I then turned to Mr. Magee. Mr. Watson [Richards] turned to me and said, "This is Mr. Magee, and he is going on the bond with you." A clerk came out then, and said that Mr. Geissinger was ready, and we went into his office. I was introduced to Mr. Geissinger. I never had the honor of his acquaintance before that. Mr. Magee was acquainted with him, and was not introduced. He was notified that we were there as co-sureties of Mr. Richards. . . . .

I was introduced to Mr. Magee. I was aquainted with Mr. Geissinger. I was introduced as a co-surety to go on Mr. Richards' bond. I asked him to let me see the bond, and I examined it, whatever conditions there were there, which I was prepared to sign, and I said, "I find the conditions are such as I desire to sign," and I said, "Do you desire the firm name, or do you want the individual names?" And Mr. Geissinger said, "I want the individual names." I said, "Then this will have to stop, because Mr. Gillingham is out of town." He says, "That is of no account; you can sign that and Mr. Gillingham can come down afterwards."

Statement of Facts.

Q. How about Mr. Magee; did he sign there? A. I thought he did. Q. Why do you say that? A. I was sure he did. I thought I saw him do it. He took the pen from me, and I was sure he signed it, and would have sworn to it. Q. How long did you remain in the room after you signed? A. A few minutes. I said, "I suppose now you are ready for me?" And Mr. Richards and myself left, leaving Mr. Magee there.

The witness further testified that to the best of his knowledge the names of the sureties were not filled in, in the body of the bond, at the time he signed it, and had they been written in, omitting Magee's name, he would never have signed it; that his understanding was that Magee was to sign the bond, as well as Gillingham.

The defendant Richards testified in corroboration of the foregoing testimony of Watson, and stated that it was his impression that Geissinger was where he could hear, at the time the witness introduced Magee to Watson as his co-surety; that the witness thought Magee had signed the bond, and did not learn that he had not done so until about a week afterward; that the witness had previously offered Magee, as well as Watson & Gillingham, to Geissinger, as sureties, and Geissinger said they were perfectly satisfactory. The defendants showed further, by cross-examination of one of the plaintiffs, that Geissinger was their agent in getting the bond executed.

In rebuttal, the plaintiffs called Geissinger, who testified that the names of the sureties were already written in the bond at the time Watson signed it, and that no change was made in it after the signing. In this, Geissinger was corroborated by his assistant, Harold Godman. Geissinger testified, further, that Watson stated at the time of signing that Gillingham would call in and sign in a day or two, and the witness replied that that would be all right, provided there would be no trouble about it; that Gillingham did not call, and the arrangement that he should do so entirely escaped the memory of the witness; that the witness did not know on what business Magee called at his office on the day the bond was signed. Magee testified for the plaintiffs, denying that he had ever agreed to become a surety in the bond, that he had taken a pen from Watson's hand after the latter had executed it, or that he had been introduced as a co-surety to Watson. He admitted that

on the former trial he stated that he might have been so intro-
duced, and might have forgotten it.

At the close of the testimony, the defendants requested the
court to charge the jury:

1. If the jury find that Richards, the other defendant, agreed
with Watson that if Watson and Gillingham would go on the
bond, Michael Magee would also go on the bond with them;
that, on the faith of this agreement, R. J. Watson executed
the bond; that Magee did not execute it; that Geissinger was
the agent and architect of the plaintiffs; and that, at the time
of the execution by Watson, he had knowledge of such an
agreement, the verdict must be for the defendants.[2]

2. If the jury find that Geissinger was the agent of the
plaintiffs, and that the bond was executed by Watson and left
with Geissinger, upon an agreement that the same should not
be complete or binding upon Watson, unless also executed by
Magee, your verdict will be for the defendants.[3]

3. The bond, in the body thereof, purported to be executed
by Gillingham as well as by Watson, trading together as Wat-
son & Gillingham. Until Gillingham signed it, in the absence
of proof of an agreement to the contrary, Watson's signature
did not bind him.[4]

4. The bond, in the body thereof, purported to be executed
by Gillingham as well as by Watson, trading together as Wat-
son & Gillingham. If you find that Geissinger was the agent
of the plaintiffs; that the bond was executed by Watson and
left with Geissinger, with the mutual understanding that the
same was not completely executed until signed by Gillingham;
and that Watson never assented to the bond being complete
without the signature of Gillingham, your verdict must be for
the defendants.[5]

5. If the jury find that Geissinger was the agent of the
plaintiffs; that it was agreed between Geissinger and Rich-
ards, before the bond was signed, that the firm of Watson &
Gillingham should act as sureties on the bond; that Watson
agreed with Geissinger that the firm of Watson & Gillingham
would act as such sureties; that he called at the office of
Geissinger, where the bond was, for the purpose of signing the
bond on behalf of the firm; that he then signed the bond, as

he did, at Geissinger's request, with the understanding between himself and Geissinger that the signature of Gillingham thereto should also be afterwards affixed, and left the bond with Geissinger with this understanding; and that Watson never thereafter agreed that the bond need not be executed by Gillingham, the verdict must be for defendants.[6]

6. The verdict must be for defendants.[7]

Answer: I have listened to all that Mr. Johnson has said, and have read the points which the defendants have presented. I must refuse all these points, and will charge you to find a verdict for the plaintiffs for so much of their claim as represents the sum paid in settlement of mechanics' liens, in excess of what was due to Mr. Richards.

There is a vital point of evidence lacking. This defect runs through all the points. There is no evidence in the case that Watson signed upon any condition that his signature should not be complete and binding upon him, unless Magee also signed. So with Gillingham; there is no evidence that the execution as to Watson was not complete and binding upon him unless Gillingham signed. . . . .

The jury rendered a verdict for the plaintiffs for $7,940.77. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendants took this appeal, specifying that the court erred:

1. In admitting the plaintiffs' offer.[1]

2–7. In refusing the defendants' points.[2 to 7]

8. In instructing the jury to find for the plaintiffs, as to the amount paid for mechanics' liens above the amount of the contract.

*Mr. John G. Johnson* (with him *Mr. G. Harry Davis*), for the appellants:

1. While the mere fact that a bond prepared for execution by several sureties, mentions as obligors more persons than have signed it, is not sufficient to rebut the inference from delivery by some of the signers that it was their intent in thus delivering to bind themselves, yet if, at the time of delivery, there is an understanding that the instrument is not then com-

Arguments.

plete, but is to be made complete by the subsequent addition of other signatures, it will not be held binding upon those who have signed, in case such additional signatures be not obtained, the delivery being conditional only : Grim v. School Directors, 51 Pa. 220 ; Simpson v. Bovard, 74 Pa. 351 ; Keener v. Crago, 81* Pa. 166 ; Fertig v. Bucher, 3 Pa. 308 ; Warfel v. Frantz, 76 Pa. 88 ; Sharp v. United States, 4 W. 21.

2. There can be no recovery, because upon the face of the bond there was a requirement of an execution by Gillingham, as well as by Watson, before it would be complete. The bond discloses a clear intent to bind the firm of Watson & Gillingham, and not R. J. Watson and F. C. Gillingham individually. They were mentioned by their respective names, simply because a firm could not sign a sealed instrument. The signature of Watson did not accomplish the purpose intended, viz., to bind the firm, and the bond showed clearly that it was incomplete until there should be such an execution as bound the firm. Moreover, the plaintiffs' agent, Geissinger, admits that there was an understanding that Gillingham was to sign and thus complete the bond. As to whether there was an understanding that it was to be completed by Magee's signature, there was a conflict of testimony, but this was for the jury, not for the court.

*Mr. Josiah R. Adams*, for the appellees :

Watson executed and delivered a joint and several bond without any agreement that he should not be bound thereby ; with no reservation limiting the delivery, or making it conditional ; with no stipulation that Magee should sign, before his own signature and delivery should be effectual ; with no notice that the bond was to be held in escrow until signed by Gillingham, and with no obligation put upon the plaintiffs to obtain Gillingham's signature. The utmost that can be drawn from the evidence is that he signed and delivered it with an expectation in his mind that Magee and Gillingham would sign also. That expectation is not sufficient to relieve him from liability : Simpson v. Bovard, 74 Pa. 360 ; Keyser v. Keen, 17 Pa. 330 ; Loew v. Stocker, 68 Pa. 226. The cases cited by the appellants are clearly distinguishable.

OPINION, Mr. CHIEF JUSTICE PAXSON:

The weak spot in the defence set up below, is to be found in the fact that there was no evidence to show that when Watson signed the bond in controversy, he did so upon the condition that he was not to be bound unless his partner, Gillingham, also signed it. The defendants contended that the bond was intended to bind, not only the firm of Watson & Gillingham, of which firm Watson was a member, but that it was also contemplated that Mr. Magee should sign as a co-surety. The bond sets forth the name of Alexander T. Richards, as principal, and of " R. J. Watson and F. C. Gillingham, trading as Watson & Gillingham," as sureties, but there is no mention of Magee's name; and, so far as his alleged omission to sign is concerned, the defence, under all the authorities, is without merit.

We have no occasion to go outside of our own state for authority upon this question. Sharp v. United States, 4 W. 21, was the case of a bond given in pursuance of an act of congress which required that it should be executed by two or more sureties. It was signed by one surety only. He had a right to suppose the bond would be executed in accordance with the act of congress, and it was held that there could be no recovery against him alone. In Fertig v. Bucher, 3 Pa. 308, the party who executed the bond expressly stipulated that it should not be delivered until twelve names had been obtained to it, and the agent of the obligee so promised; it was held that the bond remained in the hands of the agent as an escrow, and until the condition was performed there could not be a valid delivery of it. In Keyser v. Keen, 17 Pa. 327, the bond was prepared for six persons to sign, but was executed by five only. It was found in the possession of the obligee, and it was held that it was not to be implied that it was incomplete and not binding on those who executed it. Grim v. School Directors, 51 Pa. 219, was the case of a joint and several bond prepared for signatures by four persons named, but signed by three only. The absence of the signature of the third was held not to be a defence against payment by the three. To the same point is Simpson v. Bovard, 74 Pa. 354. Warfel v. Frantz, 76 Pa. 88, and Keener v. Crago, 81* Pa. 166, are upon all fours with Fertig v. Bucher, supra. There was an express stipulation that the bond was not to be delivered until all had signed.

The evidence shows that it was the intention of Watson to bind his firm, as sureties, when he went to execute the bond. He expected to sign the firm name for that purpose, but was told that the members of the firm must sign their individual names.   As the bond was under seal, his signature would have bound himself, but not his firm.   He signed his own name, with the expectation that his partner would also sign.   For some reason he omitted to do so.   Does the fact that Watson expected his partner to execute the bond, and that the firm should thus be held, relieve him from liability?   We think not.   He made no such stipulation or condition at the time. He might have done so, and thus have protected himself, under the authority of Fertig v. Bucher, and the other cases cited.   When a man signs the firm name to an instrument under seal, he always expects to bind his firm.   But he does not do so.   He binds only himself.   The fact that he intended and expected that his partners should be bound equally with himself, has never been held to relieve him from individual liability.   In what respect does this case differ in principle? And is not Watson in the precise condition as if he had signed the firm name to this bond, intending to bind his firm, yet only binding himself?   The argument of the learned counsel for the defendants, while ingenious and plausible, has failed to satisfy us that the court below committed error, either in admitting the bond in evidence or in the answers to points.

Judgment affirmed.