## Commonwealth, to use, v. Olloman et al.

*Lloyd O. Hart*, for plaintiff.
*David H. Weiner*, for defendants.

BROWNSON, P. J., August 25, 1934.—By the amended statement of claim the plaintiff declares upon a bond given to the Commonwealth to secure faithful performance of the duties of a guardian appointed by the orphans' court. It is averred that B. Trilecz was appointed by the orphans' court of this county as guar-

dian of the estate of Mary Badin, a minor; that said guardian filed a bond executed by the defendants as sureties, a copy thereof being annexed; that he received into his possession and control moneys constituting the minor's estate; that he became a bankrupt, and the orphans' court appointed the Citizens Trust Company, use plaintiff, as his successor in the guardianship, and decreed that he pay to said successor $500, the amount adjudged to be in his hands; and that he made default in such payment. The suit is brought to recover from the sureties the aforesaid sum of $500, with costs in the orphans' court amounting to $13, against which the plaintiff allows a credit for dividends paid by the guardian's bankrupt estate, aggregating $90.97, the balance claimed being $422.03, with interest from June 16, 1931, the date of the decree directing payment to be made to the successor.

The defendant Walter Olloman has filed an affidavit of defense denying that he executed the bond.

The defendant Domenic Colaizzo has filed an affidavit of defense, admitting execution of the bond by him as a surety, but averring that his signature was procured by means of a fraudulent representation, made to him by B. Trilecz, the guardian and principal in the bond, "that the said bond would also be executed by Walter Olloman as cosurety," and averring further, on information, that Walter Olloman did not execute the bond, the signature purporting to be that of Olloman upon the bond not being genuine.

The plaintiff moves for judgment against Colaizzo for want of a sufficient affidavit of defense, upon the ground that the alleged representation made by Trilecz presents no defense valid against the Commonwealth or the use-plaintiff.

In the case of McCaffrey v. Nenad et al., 10 Wash. Co. 109, this court said at page 110:

"It is well settled that when the principal in an obliga-

tion has, without the participation or knowledge of the obligee, and without any authority to represent him, practiced a fraud to induce another to sign as surety, the obligee is not affected by such fraud if, without knowledge of it, he gives value for the executed instrument: Johnston v. Patterson, 114 Pa. 398; Rothermal v. Hughes, 134 Pa. 510; Lane's App., 112 Pa. 499."

To the same effect are Kulp v. Brant, 162 Pa. 222, 226, and Donaldson v. Hartford Accident & Indemnity Co., 269 Pa. 456, 460. Here, Trilecz presented for approval a bond purporting and represented to be signed by Olloman as his surety, and actually signed as surety by Colaizzo; and on the faith of the undertaking, expressed in the bond, that these sureties would be responsible, the Commonwealth, through its agency the orphans' court, placed the control of the minor's estate in the hands of Trilecz as guardian, and it is not alleged to have been made known to the court that there had been any representation to Colaizzo that Olloman had agreed to, or would, become one of the sureties.

It is true, the copy of the bond shows that in the body thereof is written the name of Walter Olloman as one of the persons expected to execute it, and Colaizzo may be intending to claim, further, that it must be deemed that he signed on the basis, and upon the implied condition, that Olloman should sign also. For present purposes we must, of course, assume the fact to be that Olloman did not sign the bond.

In Sharp v. The United States, 4 Watts 21, a bond naming two persons as sureties was signed by only one of them, and it was held that the bond could not be enforced against him as sole surety, as it must be taken that his signing was done upon the understanding and condition that it should be executed by another surety. We have not found any case that follows Sharp v. The United States, and it was distinguished in Whitaker et al. v. Richards et al., 134 Pa. 191, upon the ground that

the bond was given under an act of Congress, "which required that it should be executed by two or more sureties", and hence Sharp "had a right to suppose the bond would be executed in accordance with the act of congress". On the other hand, the bond in the instant case, which was given under section 59 of the Fiduciaries Act of June 7, 1917, P. L. 447, was not "required" by that act to have two sureties. The language of the statute is: "The orphans' court . . . whenever they may deem it proper, may require a bond, . . . with two good and sufficient individual sureties, from every guardian of a minor". That language was taken literally from the Act of March 29, 1832, P. L. 190; and, as it stood in the Act of 1832, it was interpreted by the Supreme Court as making the exaction of security from a guardian a matter of discretion for the court: The court could in its discretion require as much as two good and sufficient sureties, or it could require no security at all. From this it must follow that if, pursuing an intermediate course, the court should accept a bond with one surety it would not be disregarding any "requirement" contained in the statute. The principle for which Sharp v. The United States was recognized as an authority in Whitaker et al. v. Richards et al., does not apply. Colaizzo had no basis for assuming, and no right to assume, that the orphans' court would not accept a bond with one surety only. The question of his liability upon the bond now in suit must therefore be determined upon principles that are stated in subsequent reported cases. Those cases lay down the following rules:

1. A person signing a joint and several obligation, in the character of a surety, with the expectation that another will become cosurety with him, must, if he does not wish to be held as sole surety in case that other does not sign, stipulate that his execution thereof shall not become effective unless and until the other person executes the instrument: Whitaker et al. v. Richards et al.,

134 Pa. 191; Simpson's Executor v. Bovard, 74 Pa. 351, 360.

2. He must also cause knowledge of the fact that he has signed subject to such a condition to be brought home to the obligee or payee, or the latter's agent, before a valuable consideration has been parted with on the faith of the instrument as executed by him: Whitaker v. Richards, supra; Keener v. Crago et al., 81* Pa. 166 (see defendant's points and answers thereto); Grossman's Appeal, 8 Sadler 348; Bugger v. Cresswell et ux., 8 Sadler 555. Where the first and the second rule have both been complied with a defense is made out: Fertig et al. v. Bucher, 3 Pa. 308; Miller v. Stem, 12 Pa. 383; Warfel v. Frantz et ux., 76 Pa. 88; Keener v. Crago et al., 81.* Pa. 166.

3. The mere fact that the form and wording of the instrument indicate an expectation that someone else would sign it also does not imply a condition that unless this is done signatures actually appended shall not be effective, nor put the obligee or payee upon notice of the existence of an understanding to this effect between the principal obligor and those who have signed as sureties for him: Keyser v. Keen, 17 Pa. 327; Grim et al. v. School Directors of Jackson Twp., 51 Pa. 219; Loew's Administrator v. Stocker, 68 Pa. 226, 231; Simpson's Executor v. Bovard, 74 Pa. 351; Whitaker et al. v. Richards et al., 134 Pa. 191; Gleeson's Estate, 192 Pa. 279.

4. In the absence of a stipulation annexing a condition to the execution, and of knowledge on the part of the obligee of the existence of such a stipulation or understanding, those who actually do sign will become bound when the obligee accepts the instrument and gives the valuable consideration therefor: Keyser v. Keen, 17 Pa. 327; Grim et al. v. School Directors of Jackson Twp., 51 Pa. 219; Simpson's Executor v. Bovard, 74 Pa. 351, 360; Whitaker et al. v. Richards et al., 134 Pa. 191, 198; Glee-

son's Estate, 192 Pa. 279; Bugger v. Cresswell et ux., 8 Sadler 555.

Here, whatever may have been the understanding between Colaizzo and Trilecz, it is not pretended that knowledge thereof was communicated to the Commonwealth (who, as trustee for the minor, was the obligee) or to the judge of the orphans' court who as the Commonwealth's representative accepted the bond, and on the faith thereof, as presented for approval, committed the minor's estate to the custody and care of the guardian, thus furnishing the valuable consideration for which the bond was given.

Under these circumstances, the fact, if it be such, that the signature purporting to be that of Olloman was not placed on the bond by himself nor by any person authorized to do so, does not constitute a defense in favor of Colaizzo: Loew's Administrator v. Stocker, 68 Pa. 226.

We are of opinion that Colaizzo's affidavit of defense is insufficient to show a good defense in his favor. Assuming that Olloman's signature is a forgery, and that Trilecz committed a fraud both upon Colaizzo and upon the orphans' court, such fraud was rendered possible by Colaizzo's trusting Trilecz to procure Olloman's signature and taking no precautions to guard against the perpetration of such fraud. The case would appear to be one for the application of the principle that when one of two innocent persons must suffer from the fraud of a third he whose negligence or misplaced confidence in the perpetrator rendered the fraud possible, shall be the one to suffer: Jeffers et ux. v. Gill, for use, 91 Pa. 290, 295; Mundorff v. Wickersham, 63 Pa. 87, 89; Garrard v. Haddan, 67 Pa. 82, 85; DeTurck v. Matz, Executrix, 180 Pa. 347, 357; Froio et ux. v. Armstrong et al. (No. 1), 277 Pa. 18, 24; B. V. D. Co. v. Kaufmann & Baer Co., 279 Pa. 152, 158. This principle was specifically applied to a case resembling the present one in Grossman's Appeal, 8 Sadler 348.

On this joint and several bond the plaintiff could have sued Colaizzo separately, to recover a judgment against him alone. In this case a joint action has been brought against him and Olloman, in which, should it be determined, in a trial or hearing against both, that Olloman has a good personal defense, judgment could be entered in his favor and against Colaizzo. We do not now have Olloman before us, and cannot, as the case is now presented, enter a judgment that will be binding as to him. But there is nothing to prevent the plaintiff's dropping Olloman out of the case by a discontinuance and proceeding against Colaizzo alone. This is what the plaintiff desires to do, as appears by the brief filed, which states that, it being believed after investigation that the genuineness of the signature purporting to be that of Olloman cannot be established, it is not desired to prosecute the action against him. We think the plaintiff may be permitted to enter a discontinuance as to Olloman and proceed against Colaizzo alone, provided the discontinuance does not embrace or amount to a release of Olloman from liability, so as to prevent Colaizzo, should he come to the conclusion that he can show the signature to be valid, from suing for contribution.

And now, August 25, 1934, it is ordered that, upon the entry by the plaintiff of a discontinuance of the action as to Walter Olloman (without embracing therein any release of liability), judgment for want of a sufficient affidavit of defense shall be entered against Domenic Colaizzo, defendant, such judgment to be (1) in favor of the Commonwealth for the penal sum of the bond, to wit, $1,000, and (2) in favor of the use-plaintiff for the damages claimed, to wit, $422.03, with interest from June 16, 1931, to be liquidated by the prothonotary, together with the costs accrued between the use-plaintiff and said defendant.