## Steele *versus* Spruance.

1. Though by the Act of 1st March, 1780, a sale of unseated *Donation Land* for taxes made during the life of the soldier is void, yet by the Acts of 1804 or 1815 the purchaser is entitled to compensation for his improvements made thereon, the same to be ascertained by the jury trying the action for the recovery of the land. See Coney *v.* Owen, 6 *Watts* 435.

2. But where a recovery in such a case is had, the land is not forfeited by the delay of the soldier or of his representative for nearly twelve years to pay the sum fixed by the jury for improvements thereon.

3. In an ejectment by the soldier or his representative, the party in possession of the land is not entitled to *interest* on the sum fixed by the jury as the value of the improvements.

4. Nor is he entitled to payment for improvements made on the land six years *after* the verdict and before any tender was made of the amount fixed by the jury for the previous improvements.

ERROR to the Common Pleas of *Erie county.*

[Steele v. Spruance.]

· This was a *scire facias* in the name of Presley Spruance, executor of the will of James Jones, deceased, for the use of Robert H. Moore and others, *v.* Adam Steele and others.

It was issued upon a judgment in ejectment recovered in the Common Pleas of Erie county on the 17th July, 1839. The ejectment was instituted on the 4th October, 1837, for donation tract No. 94, in the 10th Donation District, in Wayne township, Erie county, the title to which was claimed by the plaintiff, Presley ·Spruance, as executor of the will of James Jones, the soldier for whom the lot was drawn. The defendants (plaintiffs in error) were in possession of it, and claimed to hold it by virtue of a treasurer's sale for taxes. The case was tried on the 17th July, 1839, when the jury found for the plaintiff, and valued the improvements made by the defendants at $776.

The defendants remained in possession after the verdict, and after three years, as alleged in the plea, made other improvements. The plaintiff in the action made no offer to pay until the 1st June, 1851, when he tendered $776, the amount of the verdict, *without interest.* This was refused by the defendants, and on the 8th July, 1851, the *scire facias* was issued.

To the *scire facias* it was pleaded in substance, *first*, that by the delay for nearly twelve years to pay the amount found by the jury, the title to the premises became vested in the defendants. *Secondly*, that after waiting a reasonable time after the verdict, viz., three years and upwards, for the plaintiff to pay the amount assessed, other improvements of the value of $2000 were made, and *that these* must be paid for before recovering possession.

These pleas were demurred to.

Afterwards, on the 5th May, 1852, additional pleas were filed, in which it was alleged that the amount of the verdict should have been paid within a reasonable time; that the defendants, after waiting a reasonable time from the rendition of the verdict, viz., for *six* years, and supposing by the delay of payment that the plaintiff had abandoned all claim to the land, made other improvements on it of the value of $2000; the plaintiff, whilst the said improvements were in progress, "standing by and giving no notice that he intended to insist upon his claim to the land." By reason whereof the title became vested in the defendants.

An amended replication and demurrer were filed, in which it was. in substance averred, that after the 17th July, 1839, the date of the verdict, and before the issuing of the *scire facias*, to wit, on the· 1st of June, 1851, the plaintiff tendered the defendants the sum of $776, which the defendants refused to receive, and it was averred that the plaintiff was willing to pay that sum; it was brought into· court.

As to the improvements alleged to have been made *since* the·

[Steele *v.* Spruance.]

verdict, it was alleged that they had been made as alleged in the plea, and that the plaintiff was not bound to pay for any additional improvements made since the verdict, &c.   And a demurrer was submitted.

The opinion of KNOX, President Judge, was as follows :—

"The demurrer in this case presents two questions :

"1st. Whether the party plaintiff, by his delay in paying or offering to pay the assessed value of the improvements, is precluded from asserting his judgment, by now paying the amount found due the defendants by the verdict of the jury ?

"2d. Whether interest is properly chargeable upon the assessed value of the improvements ?

"In our opinion, the law is against the defendants upon both of these propositions; and we therefore enter judgment upon the demurrer, in favor of the plaintiff.

"The question of facts alleged upon the one side, and denied upon the other, must be tried by a jury, before the plaintiff will be entitled to final judgment."

Judgment upon the demurrer, in favor of plaintiff, as of May Term, A. D. 1852.

Error was assigned to the judgment.

By the third section of the Act of 3d April, 1804, relative to the sale of unseated lands for taxes, it is *inter alia* enacted, that no action for recovery of said land shall lie unless the same be brought within five years after the sale thereof for taxes as aforesaid.   Provided always, &c.   *   *   *   *   *   "but where the recovery is effected, in such cases the value of the improvements made on the land so sold after the sale thereof shall be ascertained by the jury trying the action for recovery, and paid by the person or persons recovering the same before he, she, or they shall obtain possession of the lands so recovered."

A similar provision is contained in the 4th section of the Act of 13th March, 1815, relative to the sale of unseated lands for taxes.

In the 20th section of the Act of 12th April, 1842, (*Acts* 262) is another provision in favor of the recovery of the value of improvements in all cases whatsoever where there is a recovery against the tax title, without regard to the nature of the defects of said title; and it is enacted that wherever any person claiming under such tax title may be out of possession and on account of defects in said title fail to recover the land, the jury, under the direction of the court trying the cause, shall assess the value of the improvements made by such person or those under whom he claims, and shall fix *the time* within which said assessment shall be paid, &c.

[Steele *v.* Spruance.]

*Thompson*, for plaintiff in error.—The defendants had a right to show cause why execution should not issue: 2 *Saunders* 72; 2 *W. & Ser.* 95.

By the Act of 1804 the plaintiff had a right to the land upon payment of the value assessed by the jury, and not otherwise. The defendants have the right of possession till payment or tender: 12 *Ser. & R.* 143; 5 *Watts* 350, Miller *v.* Keen. The defendants having no means to enforce the payment, and being bound to remain in possession or lose the advantage of the improvements, the plaintiff should be bound to tender the amount fixed by the jury within a reasonable time. In this case there has been gross laches, and during such period no notice was given by the plaintiff to the defendants that he intended to take advantage of the verdict. After waiting for *six* years other improvements were made, and after several years more the lands having risen in value, the position of the parties is different from what it was at the rendition of the verdict. It was said that under these circumstances the plaintiff should be estopped: 4 *Dallas* 348; 5 *Ser. & R.* 443; 7 *Watts* 400; 1 *Jones* 429; 4 *W. & Ser.* 328; 12 *Ser. & R.* 376; 3 *Harris* 429; 5 *Watts* 451.

It was further contended, if the plaintiff was not *estopped*, that *interest* on the amount found by the jury was recoverable. That it was an incident to every judgment in this state: 4 *Dal.* 251; also cited 5 *Watts* 350. The law recognises the equity of improvement as a high equity. It was further contended that the plaintiff should not have execution on the judgment of 1849, but should be left to resort to a *second ejectment*, wherein the defendants could have their whole improvements estimated.

*Marshall*, for defendant in error, plaintiff below.—As to whether the plaintiff was estopped, it was said that the right of compensation in the defendants for improvements was a statutory right, under the Act of 13th March, 1815, and the remedy allowed was the retention of the possession till payment of the amount assessed for improvements. No time for payment is fixed by that Act, and the Court have no power to limit it. If they had, there was no necessity for the provision as to limitation of time in the Act of 1842. The valuation is no part of the judgment: 5 *Watts* 350, Miller *v.* Keene.

As to the 2d point, it was said that *interest* was not given by the Act of Assembly. At common law the defendants were liable to be turned out of possession without compensation for improvements. They are not entitled to other or more extensive rights than are given by the Act. But further, the defendants have had the use of the improvements.

The question as to compensation for improvements made *since*

[Steele *v.* Spruance.]

the verdict was not pressed in this Court; but as to such it was said that they were made by defendants after notice by the recovery of the plaintiff's title, and were made in their own wrong. Reference was made to the opinion of Gibson, C. J., in the case of Gilmore *v.* Thompson, 3 *Watts* 110.

The opinion of the Court was delivered by

Knox, J.—A majority of the Court in Coney *v.* Owen, 6 *Watts* 435, held, that a sale for the non-payment of taxes of unseated donation land, during the life of the soldier, was void, and conferred no title upon the purchaser; but that he could not be dispossessed without compensation for his improvements.

Under this decision, the defendant's damages were assessed for his improvements at $776.

Three questions are now presented by the pleadings, all of which were ruled below in favor of the plaintiff:

1. Did the delay in paying or offering to pay the assessed value of the improvements for a period of nearly twelve years work a forfeiture of plaintiff's title?

2. Was he bound to pay for improvements made after three years had passed from the date of the verdict, and before the tender of the sum found?

3. Should the tender have included the interest upon the assessed value of the improvements?

Before proceeding to the consideration of these questions, I desire to say, that the equity of the defendants below, so strongly urged on the argument, has not presented itself to my mind in a very favorable point of view. It is conceded that this tract of land, in the hands of the old soldier, was free from taxation. Its assessment and sale was therefore a plain violation of his rights; and to compel him to lose his land, or to pay a large sum for improvements made without his knowledge or consent, was, to say the least, a somewhat harsh rule to apply to one who was in no default whatever. But the plaintiffs in error, not content with the construction of the statute already given in their favor, ask us to go further, and hold, that, as the money was not paid within what they call a reasonable time, they have an indefeasible title to the land; or, if not, that they are entitled to be remunerated for improvements made since the verdict, with interest upon the first assessment.

Unlike the Act of 1842, neither that of 1804 nor 1815 fixed, nor authorized the jury to fix, any time within which the value of the improvements should be paid; and the only means of enforcing the payment was the retention of the possession. The extent of the remedy was fixed by the legislature, and we have neither the power nor the disposition, in a case like the present, to enlarge it.

[Steele *v.* Spruance.]

The provision in the Act of 1815, which is copied from that of 1804, is as follows: "But where the recovery is effected in such cases, the value of the improvements made upon the lands so sold, after the sale thereof, shall be ascertained by the jury trying the action for recovery, and paid by the person or persons recovering the same, before he, she, or they shall obtain possession of the lands so recovered."

On the one hand, the penalty for non-payment is a stay of proceedings; and, on the other, the compensation for non-payment is the possession and use of the estate.

To allow additional improvements to be made and paid for, or to require the payment of interest whilst the possession is withheld, would be to make a new statute, rather than to enforce the old one.

If the position of the plaintiffs in error is seemingly a hard one, it must be remembered that it was originally caused by their own voluntary act in attempting to procure a title by illegal means. The officers of the county could not rightfully sell, nor could the defendants legally buy the land in controversy, and the rule of *caveat emptor* applies to all public sales of this character.

This case was properly ruled in the Common Pleas.

Judgment affirmed.