## Estate of Daniel Gleeson, deceased. Appeal of Cornelius Gleeson.

*Principal and surety—Failure of some of the obligors to sign bond.*

The omission of one of several obligors named in the body of a bond to join in the execution of it is no defense to the obligors who do sign.

*Principal and surety—Appeal bonds—Ejectment in federal court—Improvements.*

Damages for loss of rentals may be recovered on an appeal bond given in an ejectment case in the federal court; and such damages may include the rental value of a part of the premises in the possession of a tenant under a lease which had expired before the appeal was taken, if it appears that the tenant had paid no rent pending the appeal.

In a suit upon an appeal bond in ejectment a claim by defendant for improvements cannot be made for a frame building erected on piles so that it could be removed; nor can allowance be made for repairs, after the institution of the action of ejectment, on an old house, to render it inhabitable.

Argued March 23, 1899. Appeal, No. 34, Jan. T., 1899, by Cornelius Gleeson, from decree of O. C. Phila. Co., July T., 1898, No. 218, dismissing exceptions to adjudication. Before STERRETT, C. J., GREEN, MCCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Exceptions to adjudication.

The auditing judge, ASHMAN, J., stated the facts to be as follows:

On behalf of Mary K. L. Black, a claim was submitted in the sum of $3,500 upon a bond to prosecute an appeal with effect from a judgment in ejectment in the United States circuit court of October sessions, 1893, in which bond the decedent was a surety. The bond was in $5,000, to Mary K. L. Black, the plaintiff in the

original suit, conditioned that the principals therein, who are the defendants below, should prosecute their appeal to effect, and should answer all costs and damages if they should fail to make good their plea.    The appeal was afterwards, March 17, 1898, quashed by the United States Supreme Court.    The plaintiff claimed that the writ of error being a supersedeas, she was kept out of possession of her property from May 12, 1896, to March 17, 1898, and she asked for the damages which had accrued from the loss of rent during that interval.    The premises owned by the claimant, and which were the subject of the action, comprised some 912 acres which lay partly in Philadelphia and partly in Delaware counties, and they were known as Black's Island.    Three questions were presented : 1. What amount of damage, if any, had been sustained?    2. Whether loss of rent arising from the detention of the property was among the damages covered by the bond?    3. Whether the appeal contemplated by the bond had been in fact taken?

The testimony respecting the rental value during the period of eviction, given by the expert witnesses, differed.    One of them fixed it at $2.75 per acre for the whole tract, an aggregate of $2,508 yearly, and another at $1.75 per acre, or a total of $1,596 yearly.    These witnesses appeared for the claimant. Frederick Black, one of the defendants, who already occupied a part of the land, accepted, in 1894, a lease of the entire tract from the plaintiff at the yearly rent of $2,000, payable on condition that the plaintiff should insure him possession.    He never paid the rent, and continued in his original holding only by an arrangement which he made with the other defendants. After the appeal was determined, the land was subdivided, part being occupied by Frederick Black and part by the remaining children.    The former rented 218 acres at $2.00 per acre, and 143 acres at $1.50 per acre, a total rent of $650.50.    The others rented from claimant 200 acres at $2.00 per acre, and 78 acres at $1.00 per acre, making $478 yearly.    The remaining 273 acres do not seem to have been rented at all, and were worth to a tenant, according to the testimony of one of the children, $1.00 per acre.    Accepting as the standard of value the estimate which was adopted by both parties, by the claimant as lessor when she executed the leases, and by the children as lessees when they agreed to pay the rent, the total rent for the

tract would be $1,401.50 per annum, or $2,452.59 for the time now claimed for. The improvements which it was alleged were made by the tenants cannot be set off against an award for the claimant for the reason that some of them were necessary repairs which it was the duty of the lessees to provide, and others, although apparently permanent, were not annexed to the freehold  Among the latter was a dwelling house, which was erected on piles expressly to facilitate its renewal.  The auditing judge finds the damages amount to $2,452.59.

. Exceptions to the adjudication were dismissed in an opinion by PENROSE, J.  See 8 Dist. Rep. 46.

*Errors assigned* were in dismissing exceptions to adjudication.

*John T. Greene,* for appellant.—The judgment in ejectment at the most is merely conclusive that the defendants were in possession at the time of the service of the writ, and even that, in some instances, can be rebutted: Miller v. Henry, 84 Pa. 33; Bronson v. Lane, 91 Pa. 153; Sopp v. Winpenny, 68 Pa. 78; Kuhns v. Bowman, 91 Pa. 504.

A release by the claimants of property belonging to the principals, and in the hands of the claimants, is a discharge of the surety pro tanto: Schock v. Miller, 10 Pa. 401.

The construction placed on the nature of the property by the plaintiff and defendants in the lease after the mandate came back from the Supreme Court cannot alter the nature of it, in so far as the surety is concerned.  That merely made it, at most, a release of $1,300 of the principal's property and the surety is thereby discharged pro tanto: Steele v. Spruance, 22 Pa. 256; Wilkinson v. Pearson, 23 Pa. 117; Walker v. Quigg, 6 Watts, 87.

The claimant cannot recover against the surety on this bond, because the claim is for use and occupation of the premises pending the appeal; and under the decisions, such cannot be recovered on the bond: Johnson v. Hessel, 134 Pa. 315; Roberts v. Cooper, 19 How. 373; Kountze v. Omaha Hotel Co., 107 U. S. 378; Burgess v. Doble, 21 N. E. Rep. 438.

*N. Dubois Miller,* with him *Biddle & Ward,* for appellee.— The bond was valid and binding upon all of the parties to it,

and upon its breach can be sued upon: Keyser v. Keen, 17 Pa. 327; Grim v. School Directors of Jackson Twp., 51 Pa. 219; Simpson v. Bovard, 74 Pa. 351; Whitaker v. Richards, 134 Pa. 191.

The very object of the bond was to cover the loss of rents pending the appeal, and under the law damages therefor can be recovered: Roberts v. Cooper, 19 How. 373; Kountze v. Omaha Hotel Co., 107 U. S. 378; Shunick v. Thompson, 25 Ill. App. 620; Green v. Sternberg, 15 Mo. App. 32.

The allowance should be made for improvements, or for any other cause: Steele v. Spruance, 22 Pa. 256; Wilkinson v. Pearson, 23 Pa. 117; Morrison v. Robinson, 31 Pa. 456; Ege v. Kille, 84 Pa. 333.

OPINION BY MR. JUSTICE GREEN, July 19, 1899:

This court has so frequently decided that the omission of one of several obligors in a bond, to join in the execution of the bond, although named as an obligor in the body of the instrument, is no defense to the obligors who did sign, that the question must be considered as settled. In Keyser v. Keen, 17 Pa. 327, the action was brought against one of six obligors as named in the bond, though five only had signed, and the instrument was a bond of indemnity to indemnify the obligee against loss for having become surety for a deputy sheriff on his bond to the sheriff. The bond contained an admission that the obligee had become surety for the deputy, on the promise of the six to indemnify him against loss by reason of his suretyship. It was claimed for the surety sued that he was not liable because he signed upon the faith that all were to sign, but we said, LOWRIE, J.: "This bond was prepared for six obligors and is executed by only five of them; yet we cannot, therefore, infer that it is incomplete and not binding on those who did execute it. . . . . The bond declares that the plaintiff below had become surety for another person, on the promise of the six persons named in it, that they would indemnify him. This is an admission by the five who executed the bond, that they were jointly bound to indemnify the plaintiff; and although they do allege that another person agreed to become bound with them, yet when we find their bond in the hands of the plaintiff it is impossible to imply that it was not intended to bind them to

their admitted duty. The refusal of one of the six to join in the bond did not discharge the others from their promise."

This ruling was repeated in Grim v. School Directors, 51 Pa. 219, Simpson's Exr. v. Bovard, 74 Pa. 351, and Whitaker v. Richards, 134 Pa. 191.

There was no evidence in the present case that it was the agreement of the parties that the bond was not to be binding upon any unless it was signed by all, and, as it was duly delivered and found in the proper custody where it belonged as a fully executed instrument, it was an undoubtedly valid instrument as to all who did sign. We have not been referred to a single contrary decision.

The verdict in the ejectment case was rendered on April 26, 1896, and the appeal from the judgment on the verdict was taken on May 14, 1896, and on May 16, 1896, the appeal bond was filed. The appeal was quashed by the Supreme Court of the United States on March 17, 1898, and in the present proceeding on the settlement of the estate of Daniel Gleeson, deceased, who was one of the bondsmen on the appeal bond, the claim is made by the plaintiff in the ejectment, to recover damages for the loss of rental of the lands in question during the pendency of the appeal in the Supreme Court from May 12, 1896, to March 17, 1898. The bond was given in pursuance of Rule 29 of the Supreme Court of the United States, which in real actions gives damages " for the use and detention of the property, and the costs of the suit, and just damages for the delay and costs and interest on the appeal." The condition of the bond is that it is to be void if the appellants " shall prosecute the said writ to effect and answer all damages and costs if they fail to make their plea good."

It cannot be doubted that under this bond the obligors were bound to respond for all damages arising from the use and detention of the property pending the appeal. Some contention was made in the court below and is made here to the effect that no damages can be recovered on appeal bonds given in ejectment cases for the use and detention of the property pending the appeal, in consequence of the decision of the Supreme Court of the United States in Kountze v. Omaha Hotel Co., 107 U. S. Rep. 378. But while the whole subject was exhaustively discussed in the opinion in that case, and it was held

there could be no recovery for use and detention of the property pending the appeal, the decision was put upon the express ground that the case in which the bond was given was not an ejectment for the land, but a foreclosure proceeding on a mortgage. In this latter class of proceedings it was held, the land is not the subject of the controversy; it does not belong to the mortgagee, but to the mortgagor, and he has a lawful right to continue in possession until the final termination of the case. But in ejectment for the land the plaintiff claims the land itself, because it belongs to him, and he is wrongfully deprived of its possession. Hence the mere continuance of the use and possession after verdict is a wrong to the plaintiff who has recovered a verdict and judgment, and is a just cause for damage for which he is to be paid. This distinction is carefully drawn in the opinion and the decision is therefore inapplicable to the present case, which is an ordinary ejectment for the recovery of the land itself. There is nothing in conflict with this in Roberts v. Cooper, 19 How. 373. That was only an application for additional security on a bond in error, and the Supreme Court held they had not power to interfere with the court below in fixing the amount of the bond. We are very clear that in the present case there was a right in the plaintiff in the ejectment suit to recover damages for the use and detention of the land pending the appeal.

It was further contended for the appellant that there could be no recovery for the detention of part of the land, because the plaintiff in the ejectment had leased it to Frederick Black, one of the defendants, who paid her rent for it. But the fact was that the lease to Frederick Black was made in March, 1894, and terminated in March, 1895, which was a year before the appeal bond was given, and that he never had possession under that lease while the appeal was pending, and never paid a dollar of rent to the plaintiff for any part of the land during the pending of the appeal. He distinctly testified that he never obtained possession of the land under the lease, and he also testified as follows respecting that lease: " Q. This lease expired in March, 1895, did it not? A. Yes, sir; she never had possession of it. Q. And you never got possession under this lease? A. Not of the entire tract. Q. And you never felt justified in paying the rent which was agreed to be paid under

this lease did you? A. No, sir. Q. And this lease terminated, as I say, in March, 1895, prior to the appeal being taken? A. Yes, sir. Q. And from that time until the day when the marshal put the plaintiff in possession of the land, you never paid any rent at all? A. Not to my knowledge; no, sir, or to Mrs. Mary K. L. Black."

There was no testimony in contradiction of the foregoing, and it is very evident that the claim of the appellee is not subject to any deductions on account of any rents received from Fred. Black.

The only remaining matter to be considered is a claim for the value of improvements which it is alleged for the appellant were put upon the land by the defendants in the ejectment case while they were in possession. There were two of these improvements for the value of which claim was made. One was a new frame house built by Daniel N. Black, one of the defendants in the ejectment case, which he testified cost him $1,300. But he also said it was built on piles so that it could be removed, and he expected to remove it whenever he left the land. The other improvement was the repair of an old house so as to make it habitable. It was done by Daniel Black's mother for her own use, and it cost $1,000. This was of course permanent and would remain with the land. It was built however in 1897, after verdict and judgment in the ejectment case, and while the appeal was pending. The court below decided that no allowance could be made for either of these improvements, and the authorities are certainly that way. The general rule applicable in this class of cases is perhaps best stated in Morrison v. Robinson, 31 Pa. 456, thus: "But one who forcibly disseizes another and makes such improvements, or one who makes them after action brought to try the title, can have no claim to have his improvements estimated; because he has no right to choose the mode of improvement of another man's property against his known will, and justice will not compensate him at the hazard of doing wrong to the owner." In Wilkinson v. Pearson, 23 Pa. 117, it was held that it was not error to refuse to receive evidence on the trial of an ejectment that valuable improvements had been made by the defendant in possession, since the trial of a former ejectment for the same premises. In Steele v. Spruance, 22 Pa. 256, the same ruling was

made in a case in which the improvements were made after the verdict in an ejectment.

But a still more serious objection to any allowance for these improvements is that so far as the mother is concerned she simply made a necessary repair to an old building so that she could live in it. The other house which was previously occupied had burnt down and was not rebuilt. The old one that was repaired was simply used in its place.

It is very clear to us that no allowance can be made for these expenditures by way of abatement from the amount to which the plaintiff in the ejectment suit was entitled, as damages for use and detention, and hence no error was committed by the learned court below in refusing to abate the claim upon the present fund. There is no question as to the correctness of the computation of damages by the court below, and hence it is not discussed. The assignments of error are all dismissed.

The decree of the court below is affirmed and appeal dismissed at the cost of the appellant.