## King et al. v. Van Sciver et al.

*Elmer L. Menges* and *Alan J. Smith,* for plaintiffs.
*William F. Fox* of *Fox & Honeyman,* for National Surety Corporation.

FORREST, J., May 16, 1950.—Plaintiffs bring this action in assumpsit on an appeal bond which was filed by defendants, Jean H. Van Sciver, hereinafter called Van Sciver, in which she was the principal, and the National Surety Corporation, hereinafter called Surety, the surety. Upon answers being filed by both Van Sciver and Surety, in which none of the material facts were denied, plaintiffs filed a motion for judgment on the pleadings.

The question presented to the court en banc on argument of this motion was simply whether the provision of the bond sued on, providing that defendants "shall pay . . . all mesne profits accruing after judgment . . .", bound defendants to pay "mesne profits" from the date of the judgment entered upon the amicable action of ejectment or whether damages should run from the date of the handing down of the court's order refusing to open the judgment from which the defendants appealed.

Plaintiff relies on Commonwealth v. Gould, 48 Pa. Superior Ct. 528 (1912), in which the facts were somewhat similar, being an action in ejectment, which was tried before a jury, resulting in a verdict for plaintiff, and, from the entry of judgment thereon, an appeal was taken. The Superior Court affirmed the judgment for damages arising from the date of the entry of the judgment on the verdict, the phraseology of the bond being verbatim with that in the present case. However, the question in that case was not as to the date which should be used in arriving at the proper basis of damages, the court saying, on page 539:

"From the record we understand that the present case was tried *upon the theory acquiesced in by the plaintiff and both the defendants that the measure of damages was the rents actually received by Gould,* and, even if this was wrong, the defendant cannot now complain because the court adopted a theory in which

the defendants not only acquiesced but which they even adopted in the points they submitted for charge. The points submitted by the defendants at the trial quite clearly assumed that the measure of damages is the rents the defendant Gould actually received." (Italics supplied.)

Apparently there was no disagreement between the parties as to the date from which the damages, if any, should run, and, therefore, that case is not decisive here.

The bond in the instant case was worded to comply with section 10 of the Act of May 19, 1897, P. L. 67, 12 PS §1143, which provides:

"An appeal, in an action of ejectment or other action involving the title to or possession of real property when the judgment below is against the party in possession, shall operate as a supersedeas if the appellant gives bond with sufficient surety or sureties in double the sum he will probably have to pay, in case the judgment be affirmed, conditioned that the appeal be prosecuted with effect, that the appellant will not commit, or suffer to be committed, any waste on the property in dispute, *that he will pay whatever mesne profits, accruing after the judgment* shall be thereafter recovered against him, and all costs and damages awarded by the appellate court or legally chargeable against him." (Italics supplied.)

The reading of this section does not make it clear what "judgment" is referred to, e.g. whether, here, it is the judgment predicated on the amicable action or whether it is the judgment appealed from. The purpose of the giving of the bond under this act is so that the appeal may act as a supersedeas and apparently the intent of the legislature was to protect the appellee against loss by reason of the supersedeas. This conclusion finds support in 9 Standard Pa. Practice 579, page 497:

"In view of the purpose of the giving of an appeal bond, it is clear that the sureties on such a bond should not be held liable for any injury which the appellee may suffer from any reason other than the delay and risk to which he is subjected by the appeal and its operation as a supersedeas."

The cases also seem to subscribe to this theory. See Estate of Daniel Gleeson, 192 Pa. 279 (1899), and Geiger et ux. v. U. S. Fidelity and Guaranty Co., 121 Pa. Superior Ct. 554 (1936), where the court said, on page 559:

"If the defendants in the original judgment had filed a bill in equity, along the same lines as the motion to open the judgment, and it had been dismissed, on appeal from that decree they would not have been obliged, in order to obtain a supersedeas, to file an appeal bond in double the amount of the judgment and all costs accrued or likely to accrue, but only in such amount as the court might determine was sufficient to cover the costs of appeal and *such damages as would reasonably be suffered by the appellee by reason of the appeal and the supersedeas thereon.*" (Italics supplied.)

We have come to the conclusion, therefore, that "the judgment" used in the Appeal Bond Act, as well as that used in the bond, refers to the judgment appealed from and not the judgment entered on the amicable action. Both parties seem to have agreed that $180 will cover the mesne profits. Defendants having agreed that they are liable for that amount, plus all record costs, judgment in that amount should be entered.

And now, May 16, 1950, it is ordered, adjudged, and decreed that the motion for judgment on the pleadings be dismissed as to any amount over $180 plus the amount of the record costs; further, that the motion for judgment on the pleadings is sustained in the amount of $180 plus the amount of record costs, and the prothonotary is directed to enter judgment in that amount.