## National Shawmut Bank, of Boston, Trustee Under the First Mortgage, &c., v. Hartford Accident and Indemnity Co.

*Carl W. Funk, Henry S. Drinker, Jr.,* and *Dickson, Beitler & McCouch,* for plaintiff.

*Charles I. Thompson* and *Frederick L. Ballard,* for defendant.

FINLETTER, P. J., March 18, 1929.—The defendant gave its surety bond for the benefit of first mortgage bondholders to insure the completion of a certain building, payment of the contract price, freedom from liens and against default in the performance of the mortgage and bonds.

A balance of $275,000 of the contract price remains unpaid, liens to that amount have been filed, $162,000 of which are conceded to be valid; interest and other payments due under the mortgage are in default. In addition, under the terms of the mortgage, the principal has become due and remains unpaid.

So that in all the above respects there has been a breach of the condition of the bond in an aggregate amount far in excess of the penal sum, and judgment should be given against the defendant, unless some reason is shown to the contrary.

The affidavit of defense sets up defense under the following heads: (1) That the bond was never fully executed, in that all of the intended obligors did not sign it; (2) that the sureties were released by certain facts; (3) that an alleged change in the building contract, and (4) alterations made in the plans of the building released the surety; (5) that deviations from the method of payments agreed upon had the same effect.

The enterprise out of which this litigation arises was the construction of a large office building at Washington, D. C.

Those who planned it organized themselves into a business trust, called the Washington Central Trust. The necessary money, $5,900,000, was to be raised on (1) first mortgage bonds, $3,300,000; (2) second mortgage bonds, $800,000; and (3) preferred stock, $1,800,000.

Coffin & Burr Inc., a banking corporation, agreed, in a contract with the Washington Central Trust, called the "Loan Agreement;" to take the first mortgage bonds and lend $3,300,000 upon them.

The National Shawmut Bank, of Boston, was trustee under the first mortgage.

In order to sustain the value of the first mortgage bonds and to protect their holders, a joint and several surety bond was procured from the defendant and the two other surety companies in the sum of $1,200,000, conditioned as above stated.

The defendant's affidavit sets up defense under five heads, which we shall take up in order.

The first and second defenses involve the consideration of the deed of trust by which the Washington Central Trust was created and the execution of the surety bond.

The defendant contends, first, that the bond upon which the plaintiff sues is not, and never was, a binding obligation, because the National Shawmut Bank, one of the trustees of the Washington Central Trust, did not sign it. And, secondly, that even if it were the valid obligation of the defendant, the latter became surety only for the administration of the trust by the trustees, Stewart and Burnett, who signed the bond. That the consent of "plaintiff" to the substitution of other individuals as trustees released defendant.

The facts in relation to these two subjects are that the body of the bond recites "that Robert N. Burnett, Ralph A. Stewart and National Shawmut Bank, of Boston, as they are trustees of the Washington Central Trust under an agreement and declaration of trust dated June 1, 1925, a copy of which, etc., are principals," whereas the bond is signed only by Stewart and Burnett, the bank not signing.

Subsequently, during the construction of the building, two others, Montgomery and Powers, succeeded Burnett and Stewart as trustees, one of them having resigned and the other having died.

The pertinent provisions of the trust deed which created the Washington Central Trust are that all of the property involved was conveyed to the trustees, to be administered in their sole discretion; that it was provided that both trustees and shareholders should be free from personal liability for debts of the trust; that creditors were to look only to the trust fund for payment; and that the signatures of but two of the trustees were required to raise an obligation binding upon the trust. Trustees were to be chosen for limited terms, and provision was made for filling vacancies in the board arising from death, resignation or other cause.

The trust deed was duly recorded in Massachusetts and the District of Columbia.

The Washington Central Trust is, therefore, a pure trust and not a partnership, the management of the trust being vested entirely in the trustees, and the shareholders having no voice in it.

This is the test: Crocker v. Malley, 249 U. S. 223; Hecht v. Malley, 265 U. S. 144; Williams v. Milton, 215 Mass. 1; Priestley v. Treasurer, 230 Mass. 452; Small v. Smith, 294 Pa. 163.

All of the contracts involved in the case contained a full reference to the trust deed by date, names of parties and reference to the records, and were incorporated by reference and specific words into the bond sued upon.

Nowhere in the affidavit of defense does the defendant deny notice or knowledge of the existence or provisions of the trust deed, and it is evident the defendant had full knowledge of both.

1. In taking the position that the absence of the bank's signature left the bond incomplete and ineffective, the defendant treats this document as if it were an agreement to which three unassociated individuals were recited as parties of the first part. It may be granted that if three were to be bound, and were not bound, the paper would be incomplete: Russell v. Annable, 109 Mass. 72.

But if the three had agreed between themselves to be bound by the signature of two, and the opposite party knew of this agreement, the three would be bound. If the principal who has failed to sign is bound, irrespective of the bond, the omission is immaterial, and the surety is bound: Empire State Surety Co. v. Carroll County, 194 Fed. Repr. 593.

And that is the fact in the instant case. The trust deed, executed under seal by the bank, bound it to the validity of any bond or contract executed by a majority of the trustees, for that was the covenant of the trust deed.

The answer of the defendant to this is: "There are undertakings to the plaintiff in the bond in suit which the trustees are otherwise not bound to perform. As an illustration, the bond recites that the trustees will keep the building free from liens." But if the bank has covenanted in the trust deed to be bound by the seal of a majority of the trustees to all bonds, it is bound to all the covenants of the surety bond. It is unimportant that it is not "otherwise" bound.

Again, if a surety agrees to be bound irrespective of the failure of a named party to sign, the omission is immaterial: Goodyear v. Bacon, 148 Mass. 542; 32 Cyc., 50; Whitaker v. Richards, 134 Pa. 191.

If there is any force in the rule that a party is bound by the limitations of power of the party with whom he contracts, he having notice of them, the surety in this case is bound by the provision of the trust deed that the trustees may act by a majority in executing a bond, and in dealing with them should be taken to have agreed to the completion of the bond by the signatures of the two trustees.

Defendant properly says "that a provision for limited liability in a declaration of trust does not constitute a limit upon the trustees' power personally to bind themselves." It cannot, however, be seriously argued that any intention to assume a personal obligation is shown in the surety bond, or indeed in any of the contracts. The care to avoid this is obvious in every paper. For example, the bond describes the obligors as "A, B and C, as they are trustees of the Washington Central Trust under an agreement and a declaration of trust dated as June 1, 1925," etc.; and the obligors sign "as trustees of the Washington Central Trust, *but not* individually."

The defendant here was dealing with a body of men who, it knew, had agreed among themselves to be bound for certain purposes, among them the

very bond in question, by the signature of two. It was dealing with three persons who had expressly agreed under seal to transact business under a certain name, and by a certain number of signatures. The face of the instrument correctly describes the party of the first part as "A, B and C, as they are trustees of the Washington Central Trust under, &c., &c." This is the proper description of the contracting party. They were not contracting as unassociated individuals, but as persons doing business under a certain name, and in certain relations to each other and to the world, and by methods agreed upon, all of which was known to the defendant.

At the foot of the paper, it was executed by two of the trustees, being the number needed under the deed of trust; the surety companies then executed it, and delivered it so executed to the obligee, and accepted the premium.

It was provided (in paragraph 38 of the deed of trust) that "The undertaking . . . shall be designated for all purposes as the Washington Central Trust, and under that name, so far as practicable, all business shall be conducted by the Trustees."

And in paragraph 17: "Bonds and contracts executed by a majority of the trustees shall be effectual as if executed by all trustees."

"The right to adopt a name for business purposes is universally conceded to be the right of individuals, partnerships and corporations. There is no legal inhibition to the exercise of a like power by the trustees of a trust created for business purposes:" Rand v. Farquhar, 226 Mass. 91. It is accordingly held in that case with respect to an instrument under seal, that its execution in the name of the trust by two out of five of the trustees was a complete execution.

On the whole, we think it plain that the effect of the trust deed was to exempt the trustees from personal liability, to provide that creditors should look to the trust funds, that the surety had full knowledge of the provisions and limitations of the trust deed, that the bank was bound by its covenant to recognize a bond signed by a majority of the trustees as binding upon it, that it was, without its signature to the surety bond, bound by it, and that the surety company, by its knowledge of the method provided in the trust deed for the execution of bonds binding upon all the trustees, assented to the execution by that method.

2. Again, the defendant argues that the change in the Board of Trustees of the Washington Central Trust, by the substitution of two new trustees, releases it from its obligation to the *obligee* (as to whom there has been no change). Its idea is that it was entitled to the personal management of the individuals who were trustees, in whose acumen it professes great confidence.

It is not entitled to the personal management of the retired trustees; first, because the principal obligors on the bond were not the trustees as ordinary individuals, but as individuals who had peculiar limitations, known to and assented to by the defendant; that is, trustees whose powers, terms and personalities were regulated by the deed of trust. All this must have been in the contemplation of the defendant, for it knew the provisions of the trust deed.

We agree with defendant's counsel that the Washington Central Trust is not an "entity" in the sense that a corporation is, and that the defendant dealt with the trustees as with individuals. But it is also true that it dealt with them as with individuals who had certain qualifications and limitations which, by the terms of the contract, it agreed to recognize. Among these were a capacity to act by majority vote, binding upon all, to make changes in the persons of the trustees, that trustees might serve as such for a limited

term, be free from personal liability, and possess other powers and have other limitations. If the defendant was bound by contract to recognize these attributes of the individuals, it is unimportant whether they, so qualified and limited, are called an entity, or a group, or a continuing body of trustees, or merely individuals.

Secondly, the condition of the bond was not to insure the conduct of any particular individual, but the completion of and payment for a building, and the payment of principal and interest of certain mortgage bonds.

Finally, the bond, by its terms, including, as it does, by specific reference, the provisions of the deed of trust, provides, in effect, that the obligation shall be a continuing one without reference to the composition of the trustees.

The defendant has in the bond recognized the continuing character of the obligation. In the bond, Burnett, Stewart and the bank, "as they are trustees," are described as the *"principals."* The preambles of the bond go on to say "the *principals* have delivered to the obligee an Indenture of Mortgage," and have also executed a supplemental indenture of mortgage; "and the *principals* by a Loan Agreement with Coffin & Burr Inc. . . . have agreed, etc." And those documents are specifically incorporated into the bond "as fully and to all intents as if set forth therein." Yet these very documents are executed by former trustees, to whom those who signed the bond are successors. Hager, Wadden and Burnett executed the mortgage; Hager, Wadden and Burnett executed the loan agreement; Burnett, Stewart and the bank executed the supplemental loan agreement.

Surely an express description by the defendant in the bond of these changing groups of men as the "principals *in the bond*" is an acknowledgment of the continuing character of the obligation, without reference to the personality or composition of the trustees.

The mortgage also, incorporated in the bond, describes the mortgagors as "to be taken to include all such persons as from time to time are trustees of the Washington Central Trust, being the trustees under the declaration of trust and their successors in the trust."

We have referred to the subject of exoneration of the surety by the principal obligor and the defendant's argument that the absence of the bank's signature deprives it of that right against the most substantial of the obligors. Since the bank has agreed to be bound by any bond executed by a majority of the three trustees, that is, by two of them, it is our opinion that the bank *is* bound to the bond. Nevertheless, the defendant loses nothing, whether the bank is bound or not, because it, the defendant, could make no claim against the bank for personal liability, for the reason that this is covenanted against in the trust deed, of which the defendant had notice.

That such a provision is valid is long and thoroughly established.

It was said by Gibson, J., in Hess *v.* Werts, 4 S. & R. 356, 359: "I see no reason to doubt but that they (partners) may limit their responsibility by an express stipulation made with the party with whom they contract and clearly understood by him at the time."

"It is possible by clear language for a trustee to indicate that no personal liability on his part is contemplated, and such language will be given effect:" Williston on Contracts, § 312.

Parties may provide in the contract that the trustees shall not be personally liable, and that the creditor agrees to look solely to the trust property for the satisfaction of the obligation: J. P. Hildebrand. The Massachusetts Trust, 59 Am. Law Rev. 22, and cases cited in Note 15.

It is superfluous to refer to the authorities upon the subject of the *quantum* of proof of notice of the covenant to limit the trustee's liability because the affidavit of defense does not allege want of notice; and could not do so in view of the recitals in the bond, the form of signature and the recitals in the loan agreements, original and supplemental, and in the indenture of mortgage, original and supplemental.

The attitude of the authorities on the subject is, however, indicated below.

If the trustees designate themselves "as trustees but not individually," or "as trustees but not otherwise," personal liability is excluded: Hildebrand *(supra)*, page 23; Williston on Contracts, § 312.

In Hallett *v.* Dowdall, 18 Q. B. 2, a limitation of liability to the fund was upheld because the provision in the articles of association to that effect was incorporated in the contract: Beaver *v.* McGrath, 50 Pa. 479; Taylor *v.* Davis, 110 U. S. 330, 335; Bank of Topeka *v.* Eaton, 100 Fed. Repr. 8, and 107 Fed. Repr. 1003; McCarthy *v.* Parker, 243 Mass. 465.

Where the terms of the declaration of trust exempting the trustees or the shareholders from personal liability are known to the creditor, he cannot assert personal liability against them: McCarthy *v.* Parker, 243 Mass. 465.

"The terms of the note, in that it contains the words 'as such trustee under the declaration of trust dated May 23, 1887, and not otherwise,' obligated it to abide by the terms of the articles of association. Whether plaintiff examined the articles or knew their contents is of no consequence:" Bank of Topeka *v.* Eaton, 100 Fed. Repr. 8.

A covenant by trustees "as such trustees but not otherwise" to repay a loan is merely a covenant to repay the money out of the trust fund and does not impose personal responsibility on them: Wrightington on Unincorporated Associations, 227.

Before we take up the remaining defenses offered, we must refer to one of them in particular, because, unless the defendant's position with regard to it is correct, the others need not be considered.

The defendant avers that the defaults complained of were caused by the acts of plaintiff, "who cannot sue in his own wrong."

The basis of this criticism is the fact that the Shawmut National Bank is now both a trustee under the Washington Central Trust and the trustee under the mortgage for the first mortgage bondholders.

When that mortgage was executed, the bank was not one of the trustees of Washington Central Trust, but became one later.

At the outset of the affidavit of defense, counsel says that he will refer to the "National Shawmut Bank, of Boston," as the "plaintiff." He pursues that plan consistently throughout the affidavit. This is both erroneous and confusing. The plaintiff is not the "National Shawmut Bank" but the National Shawmut Bank, trustee under the mortgage given as security for the first mortgage bonds. It sues for the benefit of its *cestuis que trustent,* and in a representative capacity, and not personally or as a trustee under the business trust. When it became, as it did later, one of the three trustees of the Washington Central Trust, it did many things in that capacity which it was obliged to do under the loan agreement and the supplemental loan agreement, and many other things which it had a right to do as one of the builders and owners of the property, in which things the bondholders had no voice or control or right to interfere, and in the doing of which it in no way bound the bondholders. In doing these things, it did not act for its *cestuis que trustent* nor profess to so act, and if it had it would be beyond its power as such trustee.

What it did may affect the rights of the surety company against the Washington Central Trust or against the Shawmut Bank personally, but cannot affect the rights of the bondholders and cannot constitute a defense against the Shawmut Bank in a suit brought in its representative capacity as trustee for the benefit of these bondholders.

The general rule is that a trustee cannot charge the trust estate by his executory contracts unless authorized to do so by the instrument creating the trust. On such contracts he is personally liable, and the remedy is against him personally. He has no principal and the rules that determine the liability of an agent are not applicable to trustees: 26 Ruling Case Law, § 175, page 1316.

The defendant's argument that the bank, as mortgage trustee, cannot divest itself of its knowledge or the effect of its conduct as a member of the Washington Central Trust would have weight if the bank's own interests or property were at stake. But it has no personal interest in this suit or in the rights arising out of the surety bond. The interests and rights involved are those of the bondholders. The bank, as trustee, is a mere legal title holder with respect to the first mortgage bonds, with no more duty than a safe deposit-box to keep them safely.

Unless this is so, the surety bond was a farce. Its purpose and covenant was to save the first mortgage trustee (or rather its *cestuis que trustent*) from defaults of the principal obligor, and if the bank, as trustee, is to be deemed the same person as the bank, as principal on the bond, the condition of the latter was to save it harmless against its own default. In other words, the bond was ineffective and useless from the beginning.

As counsel for plaintiff say in their brief: "If every default of the Trustees of the Washington Central Trust, the principals in the surety bond, may be indirectly imputed to the mortgage bondholders, for which the plaintiff is trustee, no liability on the surety bond would be conceivable, since every default by the principal could thus be imputed to the obligee on the bond."

Surely the parties had no such intention.

We hold that the trustee under the first mortgage and the bondholders secured by that mortgage are not responsible for any act of the bank done in any other capacity.

[The Court then discussed the averments of irregular payments and the documents bearing thereon, and concluded that the payments were authorized.]

The bond and other contracts were executed and to be performed in other jurisdictions than Pennsylvania. The defendant properly contends that they are regulated, except as to pleading, by the law of those jurisdictions. It is also averred that there are no statutes involved, nor decisions of courts interpreting statutes, but that the questions raised are governed solely by the common law of the foreign jurisdictions.

The defendant has, and we think correctly, adopted the plan of stating the rule; that is, averring it as a fact, instead of pleading the decisions. There are no precedents in Pennsylvania for this—we are told—but the difficulty of pleading the common law of a state by a recital in the pleadings of the decisions justifies, we think, the practice adopted by the defendant. Unfortunately for it, the defendant is not helped by any of the stated rules. Assuming them to be true, as we must, they all fail of application to the instant case, because of the universality of their statement; and each one fails in pertinency by the omission of important particulars not covered by, or included in, the rule as pleaded.

The amount of the defaults alleged in the 9th, 15th and 16th paragraphs of the plaintiff's statement are not denied. Their total far exceeds the penal sum of the bond, so that it is not necessary to pass upon the item referred to in the 21st paragraph.

We are of opinion, for the reasons given above, that no sufficient defense has been made to the plaintiff's claim, and that judgment should be given in favor of the plaintiff, and against the defendant, in the sum of $1,200,000, with interest on $132,000 thereof from Dec. 1, 1927, and with interest on $1,068,000 from May 11, 1928.